**UNITED STATES DISTRICT COURT FOR THE**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **RICHARD J. JOHNSON** | § | **CIVIL ACTION NO:** |
| | § | |
| *Plaintiff* | § | **4:21-cv-01459** |
| **v.** | § | |
| | § | |
| **WINNEBAGO INDUSTRIES, INC.;** | § | |
| **RV WORLD, LLC;** | § | |
| **AND** | § | |
| **M & T BANK** | § | |
| | § | |
| *Defendants* | § | **JURY TRIAL REQUESTED** |

<u>**COMPLAINT**</u>

### I.   Parties

1.      Plaintiff, RICHARD J. JOHNSON, is an individual that is now and has been at all times a citizen of the State of Texas.

2.      Defendant, WINNEBAGO INDUSTRIES, INC., hereinafter "WINNEBAGO,"is an Iowa corporation authorized to do and doing business in the State of Texas with its principal place of business located in Iows and is a warrantor of a Recreational Vehicle that Plaintiffs purchased and is a merchant in goods of the kind  involved in this case.

WINNEBAGO agent for service of process is C T Corporation System, 400 East Court Avenue, Des Moines, Iowa 50309.

3.      Defendant, RV WORLD, LLC, hereinafter "GANDER RV SALES," is an Illinois limited liability company and a citizen of the state of Illinois.

GANDER RV SALES is authorized to do and doing business in the State of Texas whose agent for service of process is CT Corporation System, 1999 Bryan Street, Suite 900, Dallas,

-1-

Texas 75201-3136.

4.      Defendant, M&T BANK, is a New York financial institution incorporated with its principal place of business located in Buffalo, New York and authorized to do and doing business in the State of Texas and is a citizen of the state of New York.

M&T BANK's agent for service of process is M&T BANK, M & T Plaza, 345 Main Street, Buffalo, NY, 14203.

## II.    Jurisdiction

5.      This court has jurisdiction over this lawsuit because the suit arises under the Magnuson-Moss Warranty Act pursuant to 15 USC § 2310(d).

This court also has supplemental jurisdiction under 28 USC § 1367 over Plaintiff's state law claims because said claims are so related to the claims within the Court's original jurisdiction that they form part of the same case or controversy under Article 3 of the United States Constitution.

## III.    Venue

6.      Venue is proper in this district under 28 U.S.C. §1391(a)(3) because the Defendants are subject to personal jurisdiction in this district and there is no other district where the suit may be brought.

Venue is also proper in this district under Tex. Bus. & Com. Code §17.56.  VENUE. An action brought under this subchapter may be brought:

(1)    in any county in which venue is proper under Chapter 15, Civil Practice and Remedies Code;  or

(2)    in a county in which the defendant or an authorized agent of the defendant solicited the transaction made the subject of the action at bar.

-2-

Venue is also proper in this district under Tex. Bus. & Com. Code §15.033.  Breach of Warranty By Manufacturer:

A suit for breach of warranty by a manufacturer of consumer goods may be brought in any county in which all or a substantial part of the events or omissions giving rise to the claim occurred, in the county in which the manufacturer has its principal office in this state, or in the county in which the plaintiff resided at the time the cause of action accrued.

### IV.   Conditions Precedent

7.      All conditions precedents have been performed or have occurred.

### V.   Facts

#### A.   The Transaction

8.      On or about March 21, 2020, Plaintiff purchased a new 2020 WINNEBAGO NAVION bearing VIN: WDAPF4CD5KN007389, hereinafter "NAVION," from GANDER RV SALES.

The "NAVION" was purchased primarily for Plaintiff's personal use.  The sales contract was presented to Plaintiff at the dealership and was executed at the dealership.

9.      The sales price of the NAVION was $138,329.88.  Civil or Punitive penalties for breach of warranty are recoverable under the Warranty Act, if they are recoverable for breach of warranty under the applicable state law.  See *__Hughes v. Segal Enterprises, Inc.__*__, 627 F. Supp. 1231, 1238 (W.D. Ark. 1986); *Chariton Vet Supply, Inc. v. Moberly Motors Co.*, 2:08CV47MLM, 2009 WL 1011500 (E.D. Mo. Apr. 15, 2009).__

10.     The contract of sale was assigned to Defendant, U.S. BANK. The contract which was assigned contained the following provision:

**"NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER."**

**B.     Implied Warranties**

11.     As a result of the sale of the NAVION by Defendants to Plaintiff, an implied warranty of merchantability arose in the transaction which included the guarantee that the NAVION would pass without objection in the trade under the contract description, and that the NAVION was fit for the ordinary purpose for which such motor vehicles are purchased.

12.     Subsequent to the sale, an implied warranty arose in connection with the repairs performed by the Defendants.  Specifically, the Defendants impliedly warranted that the repair work had been performed in a good and workmanlike manner.

**C.     Express Warranties**

13.     In addition to the implied warranties that arose in the transaction, certain representations and express warranties were made, including, that any malfunction in the NAVION, occurring during a specified warranty period resulting from defects in material or workmanship would be repaired, and that repair work on the NAVION had, in fact, repaired the defects.

14.     Plaintiff's purchase of the NAVION was accompanied by express warranties offered by the Defendants, WINNEBAGO and GANDER RV SALES, and extending to Plaintiff.  These warranties were part of the basis of the bargain of Plaintiff's contract for purchase of the NAVION.

15.     The basic warranty covered any repairs or replacements needed during the warranty

-4-

period due to defects in factory materials or workmanship.  Any required adjustments would also be made during the basic coverage period.  All warranty repairs and adjustments, including parts and labor, were to be made at no charge.  Additional warranties were set forth in the WINNEBAGO's warranty booklet and owners manual.  Also, the Defendant, WINNEBAGO, continued to agree to extended its express warranty with the Plaintiff to cover defects that were discovered and tendered for repairs during the original factory warranty.

**D.    Actionable Conduct**

16.    In fact, when delivered, the NAVION was defective in materials and workmanship, with such defects being discovered within the warranty periods.  Many defective conditions have occurred since purchase, including, but not limited to, the following in the Plaintiff's own words:

> **"BELOW IS A SUMMARY OF THE DIFFICULTIES WE'VE HAD WITH OUR 2020 WINNEBAGO NAVION 24D; VIN WDAPF4CD5KN007389:**
>
> **WE PURCHASED THE VEHICLE ON 21 MARCH 2020 FOR $138,326.88 AT RV WORLD, LLC GANDER RV SALES LOCATED AT 19302 INTERSTATE 45 SPRING, TX 77373.**
>
> **AT THE POINT OF DELIVERY, WE WERE GIVEN A RUSHED REVIEW AND WALK THROUGH OF THE VEHICLE.**
>
> **WE IDENTIFIED SEVERAL AREAS ON THE FRONT OF THE RV THAT CONTAINED CHIPPED PAINT AND WAS TOLD THIS COULD BE TAKEN CARE OF AT OUR LOCAL/NEAREST WINNEBAGO DEALERSHIP WHICH WOULD BE IN NEW BRAUNFELS, TX.**
>
> **SINCE WE'VE HAD THIS UNIT, EVERY TIME WE'VE BEEN OUT IN IT SOMETHING GOES WRONG AND WE HAVE TO BRING IT BACK FOR SERVICE/REPAIRS.**
>
> **BELOW IS A SUMMARY OF TIMES THE RV WAS TAKEN**

**IN FOR MAINTENANCE.  REPAIR RECORDS RECEIVED FROM CAMPING WORLD AND CRESTVIEW RV ARE ATTACHED AS WELL AS EMAILS WITH CAMPING WORLD REGARDING THE PAINT WORK.**

**THE INTERRUPTIONS HAVE BEEN VERY INCONVENIENT AS WELL AS HAVING TO TRAVEL OVER AN HOUR EACH WAY TO DROP AND PICK UP THE RV.  I HAD PICKED THE RV UP ON 19 DEC 20 FOR A TRIP TO VA TO SEE MY AILING FATHER WHO PASSED WAY EARLIER THIS MONTH.**

**AFTER PICKING IT UP AND PREPARING FOR OUR TRIP, I NOTICED A LEAK AROUND THE SEWAGE PIPE.  I LATER FOUND OUT IT WAS LEAKING THE CONTENTS FROM THE BLACK TANK AND HAD TO TAKE IT BACK ON 28 DEC 20 TO GET THE LEAK AND THE PAINT WORK DONE.**

**I HAVE NOT RECEIVED IT BACK AS OF THIS DATE (28 JAN 2021).**

**IN FOR REPAIRS**

**A. 3/23/2020 (CAMPING WORLD, NEW BRAUNFELS)**

**WATER PUMP NOT WORKING**

**B. 3/26/2020 – 4/12/20 (CAMPING WORLD, NEW BRAUNFELS)**

**THE LIST OF WARRANTY ITEMS TAKEN TO (SEE CRESTVIEW RV BUDA 1) CRESTVIEW RV IN BUDA, TX.**

**THE RV WAS IN CAMPING WORLD, NEW BRAUNFELS THE ENTIRE TIME WITH NO WORK COMPLETED AT ALL.  I MADE NUMEROUS CALLS FOR UPDATES ON STATUS AND EVEN MADE TWO TRIPS TO THE SERVICE DEPARTMENT TO SPEAK WITH THE SERVICE MANAGER, STILL NOTHING WAS DONE TO GET THE RV SERVICED.**

**CALLED THE RV SERVICE DEPARTMENT IN BUDA AND**

THEY WERE ABLE TO GET US IN.

4/12/20 – 4/12/20 (IN OUR POSSESSION FOR A SHORT TRIP)

4/20/20 – 5/21/20 (CAMPING WORLD, NEW BRAUNFELS)

C.      05/26/20 – 06/20/20 (CRESTVIEW, BUDA)

THE ORIGINAL LIST OF WARRANTY ITEMS IDENTIFIED WITH CAMPING WORLD AND FROM INITIAL INSPECTION WITH GANDER RV IN SPRING, TX

D.      7/21/20 – 10/20/20

      1.      HOUSE BATTERIES DIED ON TRIP TO VA/FL

      2.      TV STOPPED WORKING, I REPLACED IT MYSELF

      3.      UNIDENTIFIED   BEEPING CONSTANTLY GOING OFF EVERY 30 SECONDS

      4.      MURPHY BED SCRAPED WALL EACH TIME IT WAS DEPLOYED AND RETRACTED.

      5.      CARBON MONOXIDE AND LP DETECTORS CONSTANTLY GOING OFF THROUGHOUT TRIP

E.      09/23/20 – 10/21/20

F.      11/28/20 – 12/19/20

BATHROOM DOOR TRACK DROPPED CAUSING DOOR TO LOCK AND PREVENTS USER FROM GETTING IN OR OUT.

G.      12/28/20 TO 04/10/21

      1.      BLACK   TANK   LEAKING SEWAGE CONTENTS WHEN CAP IS REMOVED.

      2.      PAINT CHIPS AS NOTED DURING INITIAL

**INSPECTION.**

**H.     04/03/21 TO PRESENT**

**1.     BLACK     TANK LEAKING SEWAGE CONTENTS**

**RV IN MY POSSESSION (TIMELINE IS TO THE BEST OF MY KNOWLEDGE BUT FAIRLY ACCURATE)**

**24 MAR 20 – 25 MAR 20 (1)**

**12 APR 20 – 20 APR 20 (8)**

**21 MAY 20 – 25 MAY-20 (4)**

**20 JUN 20 - 21 JUL 20 (31)**

**26 AUG 20 - 22 SEP 20 (26)**

**20 OCT 20 - 27 NOV 20 (39)**

**19 DEC 20 - 27 DEC 20 (8)**

**11 MAR 21 – 2 APR 21 (22) UNUSABLE DUE TO SEWER STILL LEAKING**

**139 DAYS (4.6 MONTHS) OUT OF 13 MONTHS**

**THE FOLLOWING INFORMATION IS ACCURATE TO THE BEST OF MY ABILITIES.**

**RICHARD J"**

17.     Since  purchase, Plaintiff has returned their NAVION to the Defendants and its authorized warranty service dealers for repairs on numerous occasions.  Despite this prolonged period during which Defendants were given the opportunity to repair the NAVION, the more significant and dangerous defects were not repaired.  Defendants failed to repair the subject vehicle so as to bring it into conformity with the warranties set forth herein.  From the date of its purchase,

-8-

the NAVION, continues to this day to exhibit some or all of the non-conformities and/or defects described herein.

18.     The defects experienced by Plaintiff with the NAVION substantially impaired its use, value and safety.

19.     Plaintiff directly notified the Defendants of the defective conditions of the NAVION on numerous occasions.  Plaintiff notified Defendants, WINNEBAGO and GANDER RV SALES, that they wanted a rescission of the sale of the NAVION but the Defendants have failed and refused to buy back Plaintiff' defective NAVION.

**VI.    Causes of Action**

**COUNT 1:  VIOLATIONS OF THE TEXAS DECEPTIVE TRADE PRACTICES ACT**

20.     Plaintiff re-alleges and incorporates by reference herein each and every allegation set forth in the preceding paragraphs.

21.     Plaintiff is "consumers" as defined in the DTPA.

22.     Defendants violated the following provisions of the DTPA:

a.      §17.50(1): the use or employment of a false, misleading, or deceptive acts or practices as defined in §17.46(b)(5), §17.46(b)(6), §17.46(b)(7), §17.46(b)(9), §17.46(b)(12),   §17.46(b)(13),   §17.46(b)(20),   §17.46(b)(22)   and §17.46(b)(24) of the DTPA that were detrimentally relied upon by Plaintiff;

b.      §17.50(2): breach of express warranty, as defined in §2.313 of the Tex Bus and Com Code (the warranty failed of its essential purpose and Plaintiff were deprived of substantial value of bargain because the defect was not corrected within reasonable time);

c.      §17.50(2):  breach of the implied warranty to perform repairs in a good and workmanlike manner, as set forth in *Melody Home Mfg. Co. v. Barnes*, 741 S.W.2d 349, 354 (Tex. 1987);

d.      §17.50(2): breach of the implied warranty of merchantability as defined in

-9-

§2.314 of the Texas Business and Commerce Code;

e.      §17.50(3): an unconscionable action or course of action as defined by §17.45(5).

23.     Because of the inherent defects in the NAVION, which defects existed at the time the NAVION was sold, although not discovered until later, the NAVION was and is not merchantable in that it would not pass without objection in the trade under the contract description and it was and is not fit for the ordinary purpose for which such recreational vehicles are used by consumers. Furthermore, Defendants have failed to perform the repair work in a good and workmanlike manner. This conduct by Defendants constitute a breach of the implied warranties described above which breach is actionable under DTPA § 17.50(a)(2).

24.     When the NAVION was not repaired, the express warranties that it would be and had been repaired were breached. Defendants' breach of the express warranties is actionable under DTPA § 17.50(a)(2).

25.     Defendants' statements that the NAVION's defects would be and had been repaired misrepresented the characteristics, uses, benefits, standard and quality of Defendants' services.  For this reason, these representations were false, misleading and deceptive as defined in DTPA § 17.46(b)(5) and (7); and this conduct is actionable under DTPA § 17.50(a)(1).

26.     The Defendants acts or practices in the selling and/or repairing of the NAVION  to Plaintiff were unconscionable actions or courses of action because they took advantage of the Plaintiff' lack of knowledge, ability, experience, or capacity of the Plaintiff to a grossly unfair degree. For this reason, this transaction was unconscionable and is actionable under DTPA § 17.50(a)(3).

27.     Plaintiff further contends that Defendants' violations of the DTPA were committed

-10-

knowingly and intentionally as those terms are defined in §17.45(9) and §17.45(13) of the DTPA entitling Plaintiff to seek civil penalties in trebling of their actual damages in accordance with the DTPA.

28.     This conduct was a producing and/or proximate cause of actual damages to Plaintiff, as set forth below.

29.     The limited remedy in Defendants' warranty fails of its essential purpose and deprives Plaintiff of the substantial value of the bargain because Defendants or its authorized dealerships did not correct the defects within a reasonable time.  Tex. Bus. and Com. Code § 2.719.  Therefore, any purported limitation of remedies is ineffective.

30.     The exclusion of consequential and incidental damages is unconscionable and therefore unenforceable.

31.     This conduct was a producing and/or proximate cause of actual damages to Plaintiff, as set forth below.

32.     Any purported waiver or limitations of rights under DTPA by the Defendants is a violation of public policy under §17.42.  WAIVERS:  PUBLIC POLICY:

    (a)     Any waiver by a consumer of the provisions of this subchapter is contrary to public policy and is unenforceable and void;  provided, however, that a waiver is valid and enforceable if:

        (1)     the waiver is in writing and is signed by the consumer;

        (2)     the consumer is not in a significantly disparate bargaining position; and

        (3)     the consumer is represented by legal counsel in seeking or acquiring the goods or services.

    (b)     A waiver under Subsection (a) is not effective if the consumer's legal counsel

was directly or indirectly identified, suggested, or selected by a defendant or an agent of the defendant.

(c)   A waiver under this section must be:

(1)   conspicuous and in bold-faced type of at least 10 points in size;

(2)   identified by the heading "Waiver of Consumer Rights," or words of similar meaning;  and

(3)   in substantially the following form:

"I waive my rights under the Deceptive Trade Practices-Consumer Protection Act, Section 17.41 et seq., Business & Commerce Code, a law that gives consumers special rights and protections.  After consultation with an attorney of my own selection, I voluntarily consent to this waiver.

(d)   The waiver required by Subsection (c) may be modified to waive only specified rights under this subchapter.

33.   Any purported limitation or reduction in the statute of limitations by the Defendants under DTPA must not be less than two years under the Texas Civil Practice and Remedies Code §16.070. Contractual Limitations Period:

(a)   Except as provided by Subsection (b), a person may not enter a stipulation, contract, or agreement that purports to limit the time in which to bring suit on the stipulation, contract, or agreement to a period shorter than two years. A stipulation, contract, or agreement that establishes a limitations period that is shorter than two years is void in this state.

(b)   This section does not apply to a stipulation, contract, or agreement relating to the sale or purchase of a business entity if a party to the stipulation, contract, or agreement pays or receives or is obligated to pay or entitled to receive consideration under the stipulation, contract, or agreement having an aggregate value of not less than $500,000.

34.   Under DTPA the statute of limitations is two years §17.565.  LIMITATION:

**All actions brought under this subchapter must be commenced within two years after the date on which the false, misleading, or deceptive act or practice**

-12-

**occurred or within two years after the consumer discovered or in the exercise of reasonable diligence should have discovered the occurrence of the false, misleading, or deceptive act or practice.  The period of limitation provided in this section may be extended for a period of 180 days if the Plaintiff proves that failure timely to commence the action was caused by the defendant's knowingly engaging in conduct solely calculated to induce the Plaintiff to refrain from or postpone the commencement of the action.**

35.     As a direct and proximate result of Defendants' willful violation of their obligations under the DTPA, Plaintiff has suffered actual, consequential and incidental damages, including but not limited to money expended on the purchase of the , damages associated with the inconvenience suffered as a result of the complete failure of the  to operate properly, the loss of use of the  during the weeks it has been in the garage for repairs, the cost of repairs related to these defects, loss of wages, and attorneys' fees.  Plaintiff has incurred and will continue to incur in order to protect their rights in this matter.  The precise amount of damages is unknown at the present time but is estimated to be in excess of $450,000.00 and will be shown according to proof at trial.  Attorneys' fees, loss of use, interest, and other damages continue to accrue.

36.     Under the DTPA, Plaintiff is entitled to recover a sum equal to the aggregate amount of costs and expenses, including attorney's fees, if Plaintiff prevails.  As a proximate result of Defendants' misconduct as alleged herein, and in an effort to protect their rights and to enforce the terms of the agreement as more particularly set forth above, it has become necessary for Plaintiff to employ the legal services of Richard C. Dalton.  Plaintiff has incurred and continues to incur legal fees, costs and expenses in connection therewith.

**COUNT 2:     VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT**

37.     Plaintiff re-alleges and incorporates by reference as though fully set forth herein each and every allegation contained in the preceding paragraphs.

-13-

38.     Plaintiff is "consumers" as defined in the Magnuson-Moss Warranty Act (hereinafter "Warranty Act"), 15 U.S.C. § 2301(3).

39.     Defendants, WINNEBAGO and GANDER RV SALES, are "suppliers" and "warrantors" as defined in the Warranty Act, 15 U.S.C. § 2310(4) and (5).

40.     The NAVION is a "consumer product" as defined in the Warranty Act, 15 U.S.C. § 2301(l), because it is normally used for personal purposes and Plaintiff in fact purchased it wholly or primarily for personal use.

41.     The express warranties more fully described herein above pertaining to the NAVION, is a "written warranty" as defined in the Warranty Act, 15 U.S.C. § 2301(6).

42.     The actions of the Defendants as herein above described, in failing to tender the NAVION to Plaintiff free of defects and/or refusing to repair and/or replace the defective NAVION tendered to Plaintiff constitute a breach of the written and implied warranties covering the NAVION and hence a violation of the Magnuson-Moss Warranty Act.

43.     Plaintiff has performed all things agreed to and required of them under the purchase agreement and warranty, except as may have been excused or prevented by the conduct of Defendants as herein alleged.

44.     As a direct and proximate result of the acts and omissions of Defendants and each of them as set forth herein above, Plaintiff has been damaged herein above in an amount in excess of $450,000.00 according to proof at trial.

45.     Pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. § 2310(d)(2), Plaintiff is entitled to recover as part of the judgment, costs and expenses of the suit including attorney's fees based on actual time expended.  As a proximate result of the misconduct of Defendants as alleged

herein, and in an effort to protect their rights and to enforce the terms of the agreement as more particularly set forth above, it has become necessary for Plaintiff to employ the legal services of Richard C. Dalton. Plaintiff has incurred and continue to incur legal fees, costs and expenses in connection therewith.

## COUNT 3: LENDER LIABILITY

46.     Plaintiff re-alleges and incorporates by reference herein each and every allegation set forth in the preceding paragraphs.

47.     Plaintiff is indebted to M&T BANK as a result of their purchase of the NAVION. Plaintiff is entitled to assert all claims and defenses stated above M&T BANK as a defense to the debt.

## COUNT 4:     BREACH OF EXPRESS WARRANTIES

48.     Plaintiff re-alleges and incorporates by reference as though fully set forth herein each and every allegation contained in the preceding paragraphs.

49.     Th Defendants' advertisements and statements in written promotional and other materials contained broad claims amounting to a warranty that Plaintiff' NAVION or those similarly situated were free from inherent risk of failure or latent defects. In addition, the Defendants issued an expressed written warranty which covered the NAVION and warranted that the NAVION, was free of defects in materials and work quality at the time of delivery.

50.     As alleged above, the Defendants breached its warranties by offering for sale and selling as safe to Plaintiff a NAVION that was latently defective, unsafe, and likely to cause economic loss to Plaintiff.

51.     In breach of the foregoing warranties, the Defendants have failed to correct said

-15-

defects.

52.     The damages Plaintiff has suffered are a direct and proximate result of Defendants' actions in this matter include, but are not limited to, diminution in value of the vehicle; costs of repairs; expenses associated with returning the vehicle for repeated repair attempts; loss of wages; loss of use; damages; and attorney fees.

**COUNT 5:     BREACH OF IMPLIED WARRANTIES**

53.     Plaintiff re-alleges and incorporates by reference as though fully set forth herein each and every allegation contained in the preceding paragraphs.

54.     The Defendants impliedly warranted that Plaintiff's NAVION which it designed, manufactured, and sold, were merchantable and fit and safe for their ordinary use, not otherwise injurious to consumers, and would come with adequate safety warnings.

55.     Any purported limitation of the duration of the implied warranties contained in the written warranties given by Defendants is unreasonable and unconscionable and void under the principles of estoppel, because Defendants knew the defects existed and might not be discovered, if at all, until the NAVION, had been driven for a period longer than the period of the written warranty, and Defendants willfully withheld information about the defects from Plaintiff.

56.     Because of the defects, Plaintiff's NAVION is unsafe and unfit for use and has caused economic loss to the Plaintiff.   Therefore, the Defendants breached the implied warranty of merchantability.

57.     The damages Plaintiff has suffered are a direct and proximate result of Defendants' actions in this matter include, but are not limited to, diminution in value of the vehicle; costs of repairs; expenses associated with returning the vehicle for repeated repair attempts; loss of wages;

loss of use; damages; and attorney fees.

## COUNT 6:    BREACH OF CONTRACT

58.      Plaintiff re-alleges and incorporatess herein by reference each and every allegation set forth in the preceding paragraphs.

59.      Plaintiff would show that the actions and/or omissions of Defendants described herein above constitute breach of the sales contract, which proximately caused the direct and consequential damages to Plaintiff described herein below, and for which Plaintiff hereby sues.

60.      The damages Plaintiff has suffered are a direct and proximate result of Defendants' actions in this matter include, but are not limited to, diminution in value of the vehicle; costs of repairs; expenses associated with returning the vehicle for repeated repair attempts; loss of wages; loss of use; damages; and attorney fees.

## VII.    Economic and Actual Damages

61.      Plaintiff sustained the following economic and actual damages as a result of the actions and/or omissions of Defendants described herein above:

    a..      Out of pocket expenses, including but not limited to the money paid towards the note securing the vehicle;

    b.      Loss of use;

    c.      Loss of the "benefit of the bargain";

    d.      Diminished or reduced market value; and

    e.      Costs of repairs.

## VIII.    Multiple Damages

62.      The Defendants' conduct in violation of the DTPA was committed knowingly, as that

-17-

term is defined in that Defendants had actual awareness of the *falsity, deception, or unfairness* of such acts, practices, and/or omissions.

63.     Plaintiff further shows that such acts, practices, and/or omissions were committed "intentionally" in that Defendants specifically intended that Plaintiff act in detrimental reliance on the falsity or deception or in detrimental ignorance of the unfairness.

64.     Therefore, Plaintiff is entitled to recover multiple damages as provided by 17.50(b)(1) of the Texas Business and Commerce Code in an amount not to exceed three times the amount of their economic damages.

## IX.     Request for Rescission

65.     Plaintiff seeks the remedy of rescission of the sales contract which is requested in the following paragraph.

66.     Plaintiff revokes his acceptance of the NAVION for the reason that its defects substantially impair its value to Plaintiff and acceptance was based on Plaintiff's reasonable reliance on the false representations and warranties of Defendants that the defects in NAVION would be repaired.  Accordingly, Plaintiff seeks a cancellation of the purchase transaction and an order of the court restoring to them the money obtained by Defendants as a result of the false representations and breaches of warranty set forth above.  Plaintiff also seeks cancellation of the debt and now offers to return the NAVION to Defendants.

## X.     Attorney Fees and Costs

67.     Plaintiff is entitled to recover as part of the judgment, costs and expenses of the suit including attorney's fees based on actual time expended.  As a proximate result of the misconduct of Defendants as alleged herein, and in an effort to protect their rights and to enforce the terms of

the agreement as more particularly set forth above, it has become necessary for Plaintiff to employ the legal services of Richard C. Dalton.  Plaintiff has incurred and continue to incur legal fees, costs and expenses in connection therewith.

## XI.    Prayer

68.    For these reasons, Plaintiff prays for judgment against the Defendants for the following:

a.    For general, special and actual damages according to proof at trial;

b.    Rescinding the sale of the 2020 WINNEBAGO NAVION bearing  VIN: WDAPF4CD5KN007389 and returning to Plaintiff the purchase price including all collateral costs at the time of the sale, any and all finance charges, insurance premiums, maintenance costs, repair costs, and damages;

c.    For incidental and consequential damages according to proof at trial;

d.    Out of pocket damages for expenditures related to any cost of repairs, deductibles; and towing charges.

e.    Any diminution in value of the NAVION, attributable to the defects;

f.    Past and future economic losses;

g.    Prejudgment and post-judgment interest;

h.    Damages for loss of use of vehicle;

i.    Civil Penalties and/or Punitive damages;

j.    Damages for mental anguish;

k.    Attorney fees;

l.    Costs of suit, expert fees and litigation expenses; and

m    All other relief this Honorable Court deems appropriate.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### XII.    Demand for Jury Trial

69.    Plaintiff hereby demands a trial by jury to the extent authorized by law.

RESPECTFULLY SUBMITTED:

BY: /s/ *Richard C. Dalton*

Richard C. Dalton
Texas Bar No. 24033539
Louisiana Bar No. 23017
California Bar No. 268598
P.O. Box 358
Carencro, Louisiana 70520-0358
rick@rickdaltonlaw.com
Tel. (337) 371-0375

ATTORNEY FOR PLAINTIFF